**SUBURBAN VIDEO, INC. d/b/a Superb Video Store, Plaintiff,**

**v.**

**CITY OF DELAFIELD, a Wisconsin municipal corporation, Defendant.**

**Civ. A. No. 88–C–707.**

United States District Court, E.D. Wisconsin.

Aug. 29, 1988.

Robert J. Lerner, Perry, Lerner & Quindel, S.C., Milwaukee, Wis., for plaintiff.

Joseph J. Ferris, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, Wis., for defendant.

## DECISION and ORDER

TERRENCE T. EVANS, District Judge.

Superb Video, which sells what have been described as "sexually explicit" books, magazines, and video cassettes, has filed this suit seeking declaratory and injunctive relief against the City of Delafield. The target of the suit is a Delafield ordinance regulating "adult-oriented establishments." Superb Video contends that the ordinance conflicts with the first, fifth, ninth and fourteenth amendments to the United States Constitution.

The disputed ordinance essentially does two things: first, it requires "adult-oriented stores" to take the doors off their individual movie booths, thereby reducing the likelihood that customers will engage in sexual activities inside those cubicles. Second, it requires adult-oriented enterprises—

but not all book stores or movie houses in the city—to comply with a rather elaborate licensing scheme. Superb Video has moved for a permanent injunction declaring the ordinance to be unconstitutional.

Claims that the ordinance violates the fifth and ninth amendments have no merit and have not been pursued. As to the other claims, for the reasons explained below, I find that the open-booth provision of the ordinance does not violate the first amendment. However, portions of the licensing system contravene the first and fourteenth amendments. Therefore, I will enjoin Delafield from enforcing aspects of the licensing scheme found in the ordinance. The rest of the ordinance, including the open-booth regulation, survives constitutional scrutiny and remains enforceable.

### FACTS

In November 1987, Suburban Video opened the Superb Video Store at 2410 Milwaukee Avenue, next to Interstate 94, in Delafield. The store specializes in sexually explicit materials, but none of its wares has been declared legally obscene (and the city makes no contention at this time that they are obscene). Along with books and magazines, Superb Video offers X-rated films and videos for viewing and purchase.

Patrons may watch films and videos in three types of booths. There are ten coin-operated video booths in which customers can view preprogrammed selections on 13″ television monitors. There are also four studio booths where customers who are contemplating cassette purchases can view short portions of videos on 13″ television monitors. Patrons select these choices at the front of the store with a clerk's help. Finally, there are six coin-operated 8–millimeter film booths. In these, the movie is projected onto the inside of the booth door after the customer enters the booth and shuts the door. The television monitors in the video booths, as well as the projectors in the film booths, are positioned on the walls opposite the booths' entrances.

Each booth is approximately three feet wide, four-and-one-half feet long, and eight feet high. All have walls that run from the floor to the ceiling, and all have doors. If the door is closed, no one on the outside can see in. The booths do not have what is apparently standard equipment in similar establishments—holes in the walls of the booths that permit the inhabitant of one booth to engage in sexual contact with the inhabitant of the adjoining booth. According to the folks at Superb Video, store clerks clean the booths' walls and floors nightly with mops and disinfectant. In addition, the booths receive a more thorough cleaning two or three times a week.

Delafield police have, to date, made no arrests at Superb Video; indeed, they have never even been summoned there. Superb Video is the only establishment in the city that features video and film viewing booths, though other stores in Delafield apparently offer X-rated video cassette rentals.

In December 1987, city officials retained an attorney who had served as a special prosecutor enforcing an anti-obscenity ordinance in Kenosha County. Delafield asked the lawyer to draft an ordinance that would "regulate" Superb Video. Contemporaneous local newspaper accounts reported that the attorney was hired to advise "on how to rid the city of Superb Video"—to help find "legal means to force the store out of the city." At about the same time, some Delafield officials appeared and spoke at a rally against pornography hosted by a group calling itself the "Concerned Citizens for Community Values." And shortly after the Common Council enacted the ordinance in question, a newspaper quoted the attorney as saying: "We've got some tools with which we could close them down in the future."

The "tools" are contained in section 11.14 of the Delafield Code of Ordinances, which the council adopted on February 15, 1988. It is a seventeen-page ordinance with eight "whereas" clauses.[1] The avowed purposes of the ordinance are "protecting and promoting the general welfare, health and

1. A copy of the ordinance is attached to this opinion.

safety" of Delafield residents. The Common Council "deems it necessary to provide for licensing and regulation of adult oriented establishments. . . ." Citing the spread of AIDS, a sexually transmitted disease, the ordinance states:

> [I]t is well known and has been found in Milwaukee and Kenosha Counties, Wisconsin; Chattanooga, Tennessee; Newport News, Virginia; and Marion County, Indiana, to name a few locals [sic], that the viewing booths in adult oriented establishments have been and are being used by patrons of said establishments for engaging in sexual acts, particularly between males, including but not limited to intercourse, sodomy, oral copulation and masturbation, resulting in unsafe and unsanitary conditions in said booths;
> . . . .

The ordinance goes on to define the businesses to which it applies. § 11.14(1)(a)–(e). In sum, these are "adult-oriented establishments" that offer "adult entertainment" or feature films, periodicals, or books depicting defined "specified sexual activities." "Adult entertainment" is defined as

> any exhibition of any motion pictures, live performance, display or dance of any type, which has as its dominant theme, or is distinguished or characterized by an emphasis on, any actual or simulated "specified sexual activities," or "specified anatomical areas," as defined below, or the removal of articles of clothing or appearing partially or totally nude.

§ 11.14(1)(g).

After defining its targets, the ordinance mandates that they obtain licenses to operate in Delafield. § 11.14(2)(a). To obtain a license, an applicant—which includes the limited partners of a partnership applicant and stockholders with more than 5% of the stock of a corporate applicant—must provide (among other information) his or her: 1) addresses for the previous ten years, 2) height, weight, eye and hair color, 3) employment history for the previous decade, 4) fingerprints and photos, and 5) criminal record. § 11.14(3)(b). Failure or refusal to give the information can be grounds for denial of the license. § 11.14(3)(e).

Section 9 of the ordinance governs the physical layout of adult-oriented establishments. It requires, in relevant part, that "[e]ach booth, room or cubicle shall be totally accessible to and from aisles and public areas of the adult-oriented establishment, and shall be unobstructed by any door, lock or other control-type devices." § 11.14(9)(a). In addition, every booth must "[h]ave at least one side totally open to a public lighted aisle so that there is an unobstructed view at all times of anyone occupying the same." [2] § 11.14(9)(b)(2).

Finally, the ordinance prohibits "any type of sexual activity" in booths; it limits their occupancy to one individual at a time, and it compels proprietors to keep the booths clean and sanitary. §§ 11.14(9)(c); 11.14(10)(f).[3]

After the ordinance was enacted, Superb Video filed the application papers needed to obtain a license. On June 20, 1988, the Delafield Common Council voted to deny the license. On July 5, 1988, Superb Video filed this suit, seeking a temporary restraining order, preliminary injunction, and permanent declaratory and injunctive relief. At a hearing on July 11, the parties stipulated to the issuance of a temporary restraining order, and I issued one on July 13, 1988. On August 1, the Common Council reversed itself and granted a license to Superb Video.

---

2. At the hearing on August 12, 1988, it was conceded by the city that these provisions require the inside of booths to be visible from the contiguous aisle; they do not necessitate that the inside of booths be visible from a single location in the store, such as the clerk's position near the cash register. I believe this interpretation of section 9 is the most reasonable one, and my decision assumes that the ordinance only requires doors to be removed.

3. The ordinance also contains some minimal lighting requirements, but these are not vigorously challenged by Superb Video, which is most concerned about the open-booth provision. In any event, the ordinance allows a low level of illumination if the required lighting proves too bright for movie viewing. § 11.14(10)(g).

On August 12, 1988, I held a hearing on the request for injunctive relief. At the conclusion of the hearing I took the matter under advisement, promising that a written decision would be issued in a week or two. The status quo was to be preserved pending my decision.

## DISCUSSION

Superb Video asserts that the ordinance is unconstitutional for four reasons: 1) the motive behind the law was to put it out of business rather than to combat the spread of AIDS; 2) the ordinance does not allow for reasonable alternative avenues of communication; 3) by removing the doors from peep-show booths, the ordinance criminalizes sexual acts that are legal when done in the privacy of closed booths; and 4) a licensing scheme similar to Delafield's has been invalidated by the Court of Appeals for the Seventh Circuit. I am persuaded only by the last argument.

Although there is evidence that some of Delafield's civic leaders want to shut down Superb Video because it sells sexually explicit material—and although such censorial intentions are disturbing in a free society —I must avoid any inquiry into alleged improper motives on the part of Delafield lawmakers. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for [courts] to eschew guesswork." *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 384, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968)). On its face, the Delafield ordinance states a valid purpose: the protection of public health, safety, and welfare and, more specifically, the prevention of AIDS. My inquiry on the question of motive can go no further.

In the *Renton* case, to be sure, there was no adult-oriented establishment in operation when Renton's city council enacted a zoning ordinance restricting their locations. *Id.* 475 U.S. at 44, 106 S.Ct. at 927. Here, by contrast, Superb Video was open for business and was the only such store in town when Delafield passed section 11.14. But that does not necessarily mean (as Superb Video suggests) that Delafield used its licensing power as a pretext to suppress protected speech. An equally plausible explanation for the sequence of events is that Delafield never had to consider the problem of AIDS in movie booths before Superb Video arrived. The Constitution does not demand that a municipality legislate on matters before those matters become entangled with first amendment considerations.

Instead, the Constitution requires Delafield to demonstrate that its regulation is a narrowly tailored restriction on first amendment interests that furthers a substantial governmental purpose. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 79–80, 96 S.Ct. 2440, 2456–57, 49 L.Ed. 2d 310 (1976) (Powell, J., concurring); *Renton*, 475 U.S. at 46–47, 106 S.Ct. at 928–29. A content-neutral time, place, and manner regulation is acceptable so long as it does not unreasonably limit alternative avenues of communication. *Renton*, 475 U.S. at 47, 106 S.Ct. at 929. As the court of appeals for this circuit explains,

> [a]dult bookstores are of course subject to the same lawful health and safety regulations of the city code that are applicable to other business establishments.... Adult bookstores may not, however, be singled out for special regulation unless the city can demonstrate that such action is narrowly devised to further a substantial and legitimate state interest unrelated to censorship or the suppression of protected expression.

*Genusa v. City of Peoria*, 619 F.2d 1203, 1214 (7th Cir.1980). Delafield's ordinance passes muster under the above standards.

■ First, the Delafield ordinance is content-neutral even though it distinguishes between adult-oriented establishments and others. Under *Renton*, an ordinance regulating such businesses is content-neutral if it is *"justified* without reference to the content of the regulated speech." *Id.* 475 U.S. at 48, 106 S.Ct. at 929 (emphasis in original). In other words, an ordinance's

focus on "secondary effects" of adult-oriented establishments—crime and neighborhood blight in Renton, AIDS in Delafield—renders the ordinance content-neutral.

■ Second, the open-booth provision furthers Delafield's substantial governmental interest in curbing the spread of AIDS. Delafield could reasonably conclude that some peep-show patrons would be more likely to engage in sexual activities with one another behind closed doors than in open cubicles. It could also conclude that the sexual activity is likely to involve strangers and thus pose a danger in terms of spreading AIDS. And while AIDS apparently cannot be spread by masturbation, or by semen on the walls or floors of booths, Delafield has a substantial (and stated) interest in ensuring sanitary, not just safe, public places.

■ Contrary to Superb Video's assertion, Delafield was not obligated to conduct independent research on the link between AIDS and anonymous sex. *See Renton,* 475 U.S. at 51–52, 106 S.Ct. at 930–31 (independent evidence unnecessary so long as city relies upon information reasonably believed to be relevant); *Genusa,* 619 F.2d at 1211 (legislative body may rely on findings of other cities' legislative bodies). Members of the Delafield Common Council were entitled to rely on the experiences of the cities and counties[4] cited in the introduction to its ordinance.

The ordinance, then, is content-neutral and furthers a substantial governmental interest. But two key questions still remain: Does section 11.14 leave open reasonable alternative avenues of communication? Is the ordinance a narrowly tailored regulation? The answer to each question is "yes."

■ Delafield's ordinance does not prohibit the movie-booth form of entertainment. It regulates only the manner in which movies may be shown, and its impact on first amendment freedoms is incidental. Although patrons may prefer to have doors on booths, the ordinance in no way bars them from watching videos and films in individual cubbyholes. Doorless cubicles do not rule out topless or bottomless flicks. In the language of *Young* and *Renton,* this measure does not suppress, or greatly restrict access to, or unreasonably limit, avenues of expression. *Young,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35; *Renton,* 475 U.S. at 47, 106 S.Ct. at 929.

■ It is a somewhat closer call whether the ordinance establishes the *least* restrictive means of achieving the city's desired ends. To survive challenge, a restriction on first amendment freedoms must be "no greater than is essential to the furtherance of that interest." *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). In this instance, one could argue that Delafield's interests would be just as well served by the requirements that booths be kept clean, that occupancy be limited to one person at a time, and that sexual activity in the booths be prohibited. Put another way, one could argue that the open-booth provision is redundant in light of the other conditions. As Superb Video points out—with a slight grin, I presume—the Supreme Court has declared that "[b]road prophylactic rules in the area of free expression are suspect." *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405 (1963).

Nevertheless, every federal court that has heard a challenge to an open-booth requirement has found that it passes the test of narrowness. *Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243 (9th Cir.1982); *Wall Distributors, Inc. v. City of Newport News,* 782 F.2d 1165 (4th Cir. 1986); *FW/PBS, Inc. v. City of Dallas,* 837 F.2d 1298 (5th Cir.1988); *Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486 (E.D.Tenn. 1986); *Berg v. Health & Hospital Corp. of Marion County,* 667 F.Supp. 639 (S.D.Ind. 1987). Like the ordinances affirmed in these cases, Delafield's does not dictate

---

**4.** The experiences of three of those places are recounted in published judicial opinions: *Wall Distributors, Inc. v. City of Newport News, Virginia,* 782 F.2d 1165 (4th Cir.1986); *Broadway* *Books, Inc. v. Roberts,* 642 F.Supp. 486 (E.D. Tenn.1986) (Chattanooga); *Berg v. Health & Hospital Corp. of Marion County, Indiana,* 667 F.Supp. 639 (S.D.Ind.1987).

what may or may not be screened, does not limit the times in which booths may operate, and does not restrict the number of booths in a store. Accordingly, I find that Delafield's ordinance comports with the *O'Brien* standards and, therefore, the first amendment.

Superb Video also contends that the ordinance impermissibly restricts speech because the firm will have to take out several booths and do extensive remodeling in order to comply. This objection appears to have been partially mooted by Delafield's position at the hearing that all booths need not be visible from a single spot in the store. Only the doors to the booths must be removed (see footnote 2).

■■■ Superb Video next argues that it would lose money by complying with the ordinance, and the operation could close as a result. This argument has little merit, for if revenues were to decline, it would be for reasons that fall short of a constitutional injury: 1) customers might try to see movies for free by looking over the shoulders of paying occupants in booths, and 2) customers might not want to see movies in open booths because they will no longer find the privacy to engage in sexual activity. As for the first claim, Superb Video can avoid the problem by having clerks patrol the movie-booth area or by rearranging the booths themselves so television monitors are not visible from the doorways. Mark Phillips, of Superb Video, testified at the hearing that moving the monitors would be difficult on account of wiring already in place—but I am not convinced rearrangement would be impossible.[5] As for the second claim, I "decline to hold that the 'right' to unobserved masturbation in a public theater is 'fundamental' or 'implicit in the concept of ordered liberty.' " *Ellwest*, 681 F.2d at 1248 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

■■■ This brings me to Superb Video's claim that removal of booth doors would criminalize sexual activity that is now legal inside the closed booths. Wisconsin's criminal code penalizes fornication, "sexual gratification," and lewd and lascivious behavior only when those actions are done in public. §§ 944.15, 944.17, and 944.20, Wis. Stat. "In public" is defined as "in a place where or in a manner such that the person knows or has reason to know that his or her conduct is observable by or in the presence of persons other than the person" with whom he or she is having the sexual relations. *See, e.g.*, § 944.15(1), Wis.Stat. Superb Video seems to be saying that the constitutional right to privacy prohibits Delafield from effectively outlawing sex in what are private places.

But Superb Video's booths are not legally private places. As Judge Robert W. Warren of this district has noted,

> one would no more reasonably expect sexual activity to take place in a movie-viewing booth than one would expect restroom activity to take place in a public elevator. Simply because a person is surrounded by four walls, the public nature of location is not automatically changed to that of private bedroom or washroom or whatever else the person enclosed imagines the place to be.

*Czerniak v. City of Milwaukee*, 669 F.Supp. 247, 249 (E.D.Wis.1987). The fact that Superb Video's booths do not have small holes in the side walls like the booths in *Czerniak* does not change my opinion. Superb Video's booths are movie booths, not mini hotel rooms rentable at the drop of a quarter. For purposes of constitutional analysis, they are not "private" places. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (no right of privacy in public accommodation such as theater).

■■■ The last argument made by Superb Video concerns the Delafield licensing scheme. To obtain a license under section

---

**5.** The movie booths present a trickier design problem than the video booths since 8mm films are currently projected onto the backs of the doors themselves. I have faith, though, in the ingenuity of Superb Video's employees to meet

the challenge. And at any rate, I am not convinced that the architectural burden is so great as to warrant judicial invalidation of an ordinance.

11.14, an applicant must disclose a great deal of detailed information about his or her personal history and appearance. Very similar disclosure requirements were invalidated in *Genusa, supra.* The court there stated that the disclosure requirements "invade plaintiffs' privacy without any legitimate justification, [so] they are prohibited by the First and Fourteenth Amendments." 619 F.2d at 1216.

Delafield's licensing system suffers from the same flaw. There is simply no logical relation between an applicant's hair color, for example, and the city's interest in fighting the spread of AIDS. At oral argument, Delafield attempted to justify the requirement on the ground that such information helps the city identify employees for the purpose of seeking civil forfeitures upon a violation.[6] This does not wash, however. Under a simpler licensing system, the city could obtain the name and address of the store operator—all the information needed to ensure sanitary and safe conditions (especially since acts of employees are imputed to the operator under § 11.14(10)(c)–(d) of the ordinance).

Consequently, the following requirements in the Delafield ordinance constitute "an unjustified prior restraint and an invasion of privacy," in the words of *Genusa,* 619 F.2d at 1217: 1) the requirement that all partners, officers, directors, and 5% shareholders file separate applications under oath, § 11.14(3)(b); 2) the reference to "aliases" in § 11.14(3)(b)(1); 3) the various background and appearance requirements in § 11.14(3)(b)(3)–(8); 4) the standards contained in §§ 11.14(4)(a)(1)(ii), 11.-14(4)(a)(2)(ii), and 11.14(4)(a)(3)(ii), 5) the pre-licensing police investigation required by § 11.14(4)(b); and 6) the requirement of an employee register, §§ 11.14(10)(a)–(b). I will enjoin Delafield from enforcing these provisions. The rest of the ordinance survives under the severability clause, § 11.14(14). And it should be noted that some of the provisions I have found to be unconstitutionally defective could possibly

be rewritten more narrowly and, as reworked, not be invalid.

■ Superb Video raises the larger question of whether the entire licensing scheme is invalid because it distinguishes between those who sell sexually explicit material and those who do not. The argument, which implicates equal protection and first amendment considerations, derives strength from a Seventh Circuit holding that followed *Genusa* by five months. *Entertainment Concepts, Inc., III v. Maciejewski,* 631 F.2d 497 (7th Cir.1980). In *Entertainment Concepts,* the court struck down a special use permit for adult theatres in Westmont, Illinois:

All other theatres operate without prior authorization. The special use requirement is, therefore, a prior restraint on speech that has as its "operative distinction" the contents of the movies shown. *Genusa,* 619 F.2d at 1214. The special use mechanism is operationally similar to the licensing procedure struck down in *Genusa.*

*Entertainment Concepts,* 631 F.2d at 504. The court went on to "doubt that any special use scheme for regulation of adult movie theatres would be constitutionally valid because of the prior restraint involved." *Id.*

*Entertainment Concepts* case is distinguishable from the instant case, however, because Westmont offered no justification for its law except the desire to suppress sexually explicit speech. *Id.* Delafield, by contrast, has come forward with a permissible health objective. Moreover, the court in *Entertainment Concepts* quoted approvingly from *Genusa* to the effect that adult-oriented establishments may not be singled out for regulation *"unless* the [Village] can demonstrate that such action" narrowly advances an important governmental interest. *Id.* (quoting *Genusa,* 619 F.2d at 1214) (emphasis added). With the modifications I am making to the licensing scheme, the Delafield ordinance ends up

---

6. Delafield also asserted that Superb Video lacks standing to challenge the licensing system because the enterprise ultimately obtained a license from the city. But because the license must be renewed annually, I find that standing exists. *See* § 11.14(7)(a) (license expires one year from issuance).

being a narrowly tailored means of furthering the city's interests in sanitation and safety. Knowing that cities may target adult-oriented stores in zoning—and considering that the *Genusa* court did not strike down the entire licensing scheme in Peoria —I reject Superb Video's contention that Delafield's entire licensing system is invalid.

■ My work is done, except for one small footnote to this dispute. On its face, the Delafield ordinance's definition of "adult entertainment" seems overly broad because it encompasses mere nudity, and even partial nudity. *Compare* § 11.14(1)(g) with *Young,* 427 U.S. at 53 n. 4, 96 S.Ct. at 2444 n. 4. To the Supreme Court, " '[N]udity alone' does not place otherwise protected material outside the mantle of the First Amendment." *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). Under the Delafield definition, it appears, a National Geographic short on indigenous culture could trigger prosecution if the film featured naked bodies and the motion picture exhibitor did not possess the requisite license.

Still, Delafield correctly observes that Mount Ephraim's law prohibited all nude dancing, whereas the Delafield ordinance only regulates the manner in which movies may be shown. Furthermore, Delafield suggests that Superb Video does not have standing to raise the overbreadth issue because the store admits to being an "adult-oriented establishment" covered by the ordinance. I take this latter assertion to heart. *See Genusa,* 619 F.2d at 1209–10 (acknowledged adult bookstore had no standing to challenge definition of same). Accordingly, my ruminations about overbreadth will stand as a mere alarum and do not affect my decision today.

## CONCLUSION

For all the foregoing reasons, Superb Video's motion for an injunction is DENIED in large part and GRANTED in small part. Specifically, Delafield is hereby permanently enjoined from enforcing those sections of its licensing system described five paragraphs above. Pursuant to the Declaratory Judgments Act, I find that those particular provisions are invalid as violations of the first and fourteenth amendments.

Because Superb Video obtained a license notwithstanding my ruling, I DENY its request for damages. But because it is to some extent a prevailing party, and to avoid any chilling of legitimate first amendment challenges, Superb Video is entitled to costs and attorney's fees under 42 U.S. C. § 1983. The temporary restraining order that issued on July 13, 1988, is dissolved, and counsel for the plaintiff is ordered to submit for my signature a narrowly drawn injunctive order consistent with this opinion.

## ADDENDUM

### ORDINANCE NO. 225

AN ORDINANCE TO CREATE SECTION 11.14 OF THE CITY OF DELAFIELD CODE RELATIVE TO ADULT-ORIENTED ESTABLISHMENTS.

WHEREAS, it is a lawful purpose of the City Council for the City of Delafield, Wisconsin, to enact regulatory ordinances protecting and promoting the general welfare, health and safety of its citizens; and

WHEREAS, the City is empowered to enact such ordinances pursuant to the Constitution and Laws of the State of Wisconsin; and

WHEREAS, the City Council deems it necessary to provide for licensing and regulation of adult oriented establishments including; but not limited to, adult bookstores, adult mini-motion picture establishments, adult motion picture theatres and adult cabarets; and

WHEREAS, many adult oriented establishments install booths with doors in which patrons can view adult oriented movies or videotape or film or view other forms of adult entertainment; and

WHEREAS, it is well known and has been found in Milwaukee and Kenosha Counties, Wisconsin; Chattanooga, Tennessee; Newport News, Virginia; and Marion

County, Indiana, to name a few locals, that the viewing booths in adult oriented establishments have been and are being used by patrons of said establishments for engaging in sexual acts, particularly between males, including but not limited to intercourse, sodomy, oral copulation and masturbation, resulting in unsafe and unsanitary conditions in said booths; and

WHEREAS, the State of Wisconsin Division of Health has indicated that as of July 25, 1986, 96 cases of Acquired Immune Deficiency Syndrome were reported in the State, including 54 that resulted in death and that Wisconsin can expect a ten fold increase in reported cases between 1986 and 1991; and

WHEREAS, AIDS is a sexually transmitted disease which destroys the body's immune system, is always fatal, and has no known cure; and

WHEREAS, the viral agents responsible for AIDS and other sexually transmitted diseases have all been isolated at one time or another from semen

NOW THEREFORE, be it ordained by the City Council for the City of Delafield as follows:

Section 11.14 of the code is created to read:

SECTION 1.  Definitions

For the purpose of this ordinance, the following words and phrases shall mean:

(a) "Adult-oriented establishment," shall include, but is not limited to, "adult bookstores," "adult motion picture theatres," "adult mini-motion picture establishments," or "adult cabaret," and further means any premises to which public patrons or members are invited or admitted and which are so physically arranged so as to provide booths, cubicles, rooms, compartments or stalls separate from the common areas of the premises for the purposes of viewing adult-oriented motion pictures, or wherein an entertainer provides adult entertainment to a member of the public, a patron or a member, whether or not such adult entertainment is held, conducted, operated or maintained for a profit, direct or indirect.

(b) "Adult bookstore" means an establishment having as its stock in trade, for sale, rent, lease, inspection or viewing books, films, video cassettes, magazines or other periodicals which are distinguished or characterized by their emphasis on matters depicting, describing or relating to "specific sexual activities" or "specified anatomical areas" as defined below, and in conjunction therewith have facilities for the presentation of adult entertainment, as defined below, including adult oriented films, movies or live performances, for observation by patrons therein.

(c) "Adult motion picture theater" means an enclosed building with a capacity of fifty (50) or more persons used for presenting material having as its dominant theme, or distinguished or characterized by an emphasis on, matters depicting, describing or relating to "specified sexual activities," or "specified anatomical areas," as defined below, for observation by patrons therein.

(d) "Adult mini-motion picture theater" means an enclosed building with a capacity of less than fifty (50) persons used for presenting material having as its dominant theme, or distinguished or characterized by an emphasis on, matters depicting, describing or relating to "specified sexual activities," or "specified anatomical areas," as defined below, for observation by patrons therein.

(e) "Adult cabaret" means a cabaret which features topless dancers, stripers, male or female impersonators, or similar entertainers.

(f) "Council" means the City Council for the City of Delafield, Wisconsin.

(g) "Adult entertainment" means any exhibition of any motion pictures, live performance, display or dance of any type, which has as its dominant theme, or is distinguished or characterized by an emphasis on, any actual or simulated "specified sexual activities," or "specified anatomical areas," as defined below, or the removal of articles of clothing or appearing partially or totally nude.

(h) "Operators" means any person, partnership, or corporation operating, conduct-

ing, maintaining or owning any adult-oriented establishment.

(i) "Specified sexual activities" means simulated or actual:

1) showing of human genitals in a state of sexual stimulation or arousal;

2) acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sado-masochistic abuse, fellatio or cunnilingus;

3) fondling or erotic touching of human genitals, pubic region, buttock or female breasts.

(j) "Specified anatomical areas" means:

1) less than completely and opaquely covered human genitals, pubic region, buttocks, and female breast below a point immediately above the top of the areola;

2) human male genitals in a discernible turgid state, even if opaquely covered.

### SECTION 2. License.

(a) Except as provided in subsection (d) below, from and after the effective date of this ordinance, no adult-oriented establishment shall be operated or maintained in the City of Delafield without first obtaining a license to operate issued by the City of Delafield.

(b) A license may be issued only for one (1) adult-oriented establishment located at a fixed and certain place. Any person, partnership, or corporation which desires to operate more than one adult-oriented establishment must have a license for each.

(c) No license or interest in a license may be transferred to any person, partnership or corporation.

(d) All adult-oriented establishments existing at the time of the passage of this ordinance must submit an application for a license within ninety (90) days of the passage of this ordinance. If an application is not received within said ninety (90) day period, then such existing adult-oriented establishment shall cease operations.

### SECTION 3. Application for License.

(a) Any person, partnership or corporation desiring to secure a license shall make application to the City Clerk. The application shall be filed in triplicate with and dated by the City Clerk. A copy of the application shall be distributed promptly by the City Clerk to the Delafield Police Department and to the applicant.

(b) The application for a license shall be upon a form provided by the City Clerk. An applicant for a license, which shall include all partners or limited partners of a partnership applicant, and all officers or directors of a corporate applicant and all stockholders holding more than five (5) percent of the stock of a corporate applicant, or any other person who is interested directly in the ownership or operation of the business, shall furnish the following information under oath:

(1) Name and address, including all aliases.

(2) Written proof that the individual is at least eighteen (18) years of age.

(3) All residential addresses of the applicant for the past three (3) ten (10) years.

(4) The applicant's height, weight, color of eyes and hair.

(5) The business, occupation or employment of the applicant for five (5) ten (10) (LJ) years immediately preceding the date of application.

(6) Whether the applicant previously operated in this or any other county, city or state under an adult-oriented establishment license or similar business license; whether the applicant has ever had such a license revoked or suspended, the reason therefor, and the business entity or trade name under which the applicant operated that was subject to the suspension or revocation.

(7) All criminal statutes, whether federal or state, or city ordinance violation convictions, forfeiture of bond and pleadings of nolo contendere on all charges, except minor traffic violations.

(8) Fingerprints and two (2) portrait photographs at least two (2) inches by two (2) inches of the applicant.

(9) The address of the adult-oriented establishment to be operated by the applicant.

(10) If the applicant is a corporation, the application shall specify the name of the corporation, the date and state of incorporation, the name and address of the registered agent and the name and address of all shareholders owning more than five percent (5%) of the stock in said corporation and all officers and directors of the corporation.

(c) Within twenty one (21) days of receiving an application for a license the City Clerk shall notify the applicant whether the application is granted or denied.

(d) Whenever an application is denied, the City Clerk shall advise the applicant in writing of the reasons for such action. If the applicant requests a hearing within ten (10) days of receipt of notification of denial, a public hearing shall be held within ten (10) days thereafter before the Council, as hereinafter provided.

(e) Failure or refusal of the applicant to give any information relevant to the investigation of the application or his or her refusal or failure to appear at any reasonable time and place for examination under oath regarding said application or his or her refusal to submit to or cooperate with any investigation required by this ordinance shall constitute an admission by the applicant that he or she is ineligible for such license and shall be grounds for denial thereof by the City Clerk.

SECTION 4. Standards for Issuance of License.

(a) To receive a license to operate an adult-oriented establishment, an applicant must meet the following standards:

(1) If the applicant is an individual:

(i) The applicant shall be at least eighteen (18) years of age.

(ii) The applicant shall not have been convicted of or pleaded nolo contendere to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application.

(iii) The applicant shall not have been found to have previously violated this ordinance within five (5) years immedi-

ately preceding the date of the application.

(2) If the applicant is a corporation:

(i) All officers, directors and stockholders required to be named under Section 3 (b) shall be at least eighteen (18) years of age.

(ii) No officer, director or stockholder required to be named under Section 3(b) shall have been convicted of or pleased nolo contendere to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application;

(iii) No officer, director, or stockholder required to be named under Section 3(b) shall have been found to have previously violated this ordinance within five (5) years immediately preceding the date of the application.

(3) If the applicant is a partnership, joint venture, or any other type of organization where two (2) or more persons have a financial interest:

(i) All persons having a financial interest in the partnership, joint venture or other type of organization shall be at least eighteen (18) years of age.

(ii) No persons having a financial interest in the partnership, joint venture or other type of organization shall have been convicted of or pleaded nolo contendere to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application;

(iii) No person having a financial interest in the partnership, joint venture or other type of organization shall have been found to have violated any provision of this ordinance within five (5) years immediately preceding the date of the application.

(b) No license shall be issued unless the Delafield Police Department has investigated the applicant's qualifications to be licensed. The results of that investigation

shall be filed in writing with the City Clerk no later than fourteen (14) days after the date of the application.

SECTION 5. Fees

(a) A license fee of TWO HUNDRED FIFTY AND 00/100 ($250.00) DOLLARS shall be submitted with the application for a license. If the application is denied, one-half (1/2) of the fee shall be returned.

SECTION 6. Display of License or Permit.

(a) The license shall be displayed in conspicuous public place in the adult-oriented establishment.

SECTION 7. Renewal of License or Permit.

(a) Every license issued pursuant to this Ordinance will terminate at the expiration of one (1) year from the date of issuance, unless sooner revoked, and must be renewed before operation is allowed in the following year. Any operator desiring to renew a license shall make application to the City Clerk. The application for renewal must be filed not later than sixty (60) days before the license expires. The application for renewal shall be filed in triplicate with and dated by the City Clerk. A copy of the application for renewal shall be distributed promptly by the City Clerk to the Delafield Police Department and to the operator. The application for renewal shall be upon a form provided by the City Clerk and shall contain such information and data, given under oath or affirmation, as is required for an application for a new license.

(b) A license renewal fee of TWO HUNDRED FIFTY AND 00/100 ($250.00) DOLLARS shall be submitted with the application for renewal. In addition to the renewal fee, a late penalty of ONE HUNDRED AND 00/100 ($100.00) DOLLARS shall be assessed against the applicant who files for a renewal less than sixty (60) days before the license expires. If the application is denied, one-half (1/2) of the total fees collected shall be returned.

(c) If the Delafield Police Department is aware of any information bearing on the operator's qualifications, that information shall be filed in writing with the City Clerk.

SECTION 8. Revocation of License.

(a) The Council shall revoke a license or permit for any of the following reasons:

(1) Discovery that false or misleading information or data was given on any application or material facts were omitted from any application.

(2) The operator or any employee of the operator, violates any provision of this Ordinance or any rule or regulation adopted by the Council pursuant to this Ordinance; provided, however, that in the case of a first offense by an operator where the conduct was solely that of an employee, the penalty shall not exceed a suspension of thirty (30) days if the Council shall find that the operator had no actual or constructive knowledge of such violation and could not by the exercise of due diligence have had such actual or constructive knowledge.

(3) The operator becomes ineligible to obtain a license or permit.

(4) Any cost or fee required to be paid by this Ordinance is not paid.

(5) Any intoxicating liquor or cereal malt beverage is served or consumed on the premises of the adult-oriented establishment.

(b) The Council, before revoking or suspending any license or permit, shall give the operator at least ten (10) days' written notice of the charges against him, and the opportunity for a public hearing before the Council, as hereinafter provided.

(c) The transfer of a license or any interest in a license shall automatically and immediately revoke the license.

(d) Any operator whose license is revoked shall not be eligible to receive a license for one (1) year from the date of revocation. No location or premises for which a license has been issued shall be used as an adult-oriented establishment for six (6) months from the date of revocation of the license.

SECTION 9. Physical Layout of Adult-Oriented Establishment.

Any adult-oriented establishment having available for customers, patrons or mem-

bers, any booth, room or cubicle for the private viewing of any adult entertainment must comply with the following requirements:

(a) Access. Each booth, room or cubicle shall be totally accessible to and from aisles and public areas of the adult-oriented establishment, and shall be unobstructed by any door, lock or other control-type devices.

(b) Construction. Every booth, room or cubicle shall meet the following construction requirements:

(1) Each booth, room or cubicle shall be separated from adjacent booths, rooms and cubicles and any non-public areas by a wall.

(2) Have at least one side totally open to a public lighted aisle so that there is an unobstructed view at all times of anyone occupying same.

(3) All walls shall be solid and without any openings, extended from the floor to a height of not less than six (6) feet and be light colored, non-absorbent, smooth textured and easily cleanable.

(4) The floor must be light colored, non-absorbent, smooth textured and easily cleanable.

(5) The lighting level of each booth, room or cubicle, when not in use shall be a minimum of ten (10) foot candles at all times, as measured from the floor.

(c) Occupants. Only one individual shall occupy a booth, room or cubicle at any time. No occupant of same shall engage in any type of sexual activity, cause any bodily discharge or litter while in the booth. No individual shall damage or deface any portion of the booth.

SECTION 10. Responsibilities of the Operator.

(a) The operator shall maintain a register of all employees, showing the name and aliases used by the employee, home address, age, birth-date, sex, height, weight, color of hair and eyes, phone numbers, Social Security Number, date of employment and termination, and duties of each employee. The above information on each employee shall be maintained in the reg-ister on the premises for a period of three (3) years following termination.

(b) The operator shall make the register of employees available immediately for inspection by police upon demand of a member of the Delafield Police Department at all reasonable times.

(c) Every act or omission by an employee constituting a violation of the provisions of this Ordinance shall be deemed the act or omission of the operator if such act or omission occurs either with the authorization, knowledge, or approval of the operator, or as a result of the operator's negligent failure to supervise the employee's conduct, and the operator shall be punishable for such act or omission in the same manner as if the operator committed the act or caused the omission.

(d) Any act or omission of any employee constituting a violation of the provisions of this Ordinance shall be deemed the act or omission of the operator for purposes of determining whether the operator's license shall be revoked, suspended or renewed.

(e) No employee of an adult-oriented establishment shall allow any minor to loiter around or to frequent an adult-oriented establishment or to allow any minor to view adult entertainment as defined herein.

(f) The operator shall maintain the premises in a clean and sanitary manner at all times.

(g) The operator shall maintain at least 10 foot candles of light in the public portions of the establishment, including aisles, at all times. However, if a lesser level of illumination in the aisles shall be necessary to enable a patron to view the adult entertainment in a booth, room or cubicle adjoining an aisle, a lesser amount of illumination may be maintained in such aisles, provided, however, at no time shall there be less than one (1) foot candle of illumination in said aisles, as measured from the floor.

(h) The operator shall insure compliance of the establishment and its patrons with the provisions of this Ordinance.

SECTION 11. Administrative Procedure and Review.

Chapter 227, Wisconsin Statutes, concerning contested cases shall govern the

administrative procedure and review regarding the granting, denial, renewal, non-renewal, revocation or suspension of a license.

SECTION 12. Exclusions.

All private schools, and public schools, as defined in Chapter 115, Wisconsin Statutes, located within the City of Delafield are exempt from obtaining a license hereunder when instructing pupils in sex education as part of its curriculum.

SECTION 13. Penalties and Prosecution.

(a) Any person, partnership, or corporation who is found to have violated this Ordinance shall be fined a definite sum not exceeding TWO HUNDRED FIFTY AND 00/100 ($250.00) DOLLARS and shall result in the revocation of any license.

(b) Each violation of this ordinance shall be considered a separate offense, and any violation continuing more than one day shall be considered a separate offense.

SECTION 14. Severability.

If any provision of this Ordinance is deemed invalid or unconstitutional by a Court competent jurisdiction, such invalidity or unconstitutionality shall not affect the other provisions of same.

SECTION 15. Enforcement.

The City of Delafield Police Department shall have the authority to enter any adult oriented establishment at all reasonable times to inspect the premises and enforce this ordinance.

Adopted this 15th day of February 1988.

/s/ Robert M. Savrnoch
MAYOR
ATTEST:
/s/ Lois Jensen
CITY CLERK

Date published February 23, 1988

Effective date February 24, 1988